IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ABDUL FLAMER                 :       CIVIL ACTION
                                   :
    v.                        :
                                   :
SUPERINTENDENT COLEMAN, et al. :      No.  08-3127

**MEMORANDUM**

LOWELL A. REED, JR., Sr. J.                                September 17, 2009

Before the court is a pro se petition for writ of habeas corpus filed pursuant to 28

U.S.C. § 2254 by Abdul Flamer ("Petitioner") (Doc. No. 1) and the Respondents'

response thereto ("Response") (Doc. No. 9). Petitioner is currently incarcerated at the

Fayette State Correctional Institution in LaBelle, Pennsylvania. For the reasons that

follow, the petition will be denied.

**FACTS AND PROCEDURAL HISTORY**

The state court outlined the facts of the instant case as follows:

> At approximately 11:00 p.m., on the evening of November 28, 1999,
> Morgan Hall and Orlando Butler (the victims) were sitting in their parked
> vehicle when two [2] men, identified as [Petitioner] and Jerome Pinkard
> (Pinkard) approached the parked car. Hall started the car as [Petitioner]
> approached the vehicle and gestured to Butler for a cigarette. Butler
> advised Hall to drive away but before Hall could act, [Petitioner] entered
> the unlocked backseat passenger area of the vehicle and demanded the
> victims' valuables. The victims did not comply immediately with the
> demand, and, as a result, [Petitioner] pistol-whipped Butler several times
> before repeating his demand.
>
> After the beating, the victims complied with [Petitioner's] demand and
> surrendered their valuables. At that time, Pinkard approached the car and
> thrust his hand into Hall's jacket to search for other valuables. Pinkard then

ordered Butler to exit the vehicle.  Butler complied, and Pinkard demanded his jacket.  Butler did not give Pinkard the jacket but, instead, fled the scene.  Pinkard gave chase, leaving [Petitioner] and Hall alone in the vehicle.

After Pinkard and Butler left the scene, [Petitioner] demanded Hall's jacket. Hall fumbled with the coat as he was attempting to remove it, and [Petitioner] became irritated with Hall.  [Petitioner] pressed the gun behind Hall's left ear and exclaimed, "Forget this, I'm going to kill you."  Hall attempted to wrestle the gun away from [Petitioner], but [Petitioner] shot Hall in the neck.  [Petitioner] exited the vehicle, ran into a waiting getaway car and drove off.  Hall managed to stumble to a nearby home and asked the owner of the home to call 911.

Commonwealth v. Flamer, 830 A.2d 1045 (Pa. Super. 2003); No. 2285 EDA 2002, at 1-2

(Pa. Super. June 6, 2003) (unpublished memorandum), attached as Appendix "A" to

Response (Doc. No. 9).

On December 4, 2001, after a non-jury trial, the Honorable Pamela Pryor Dembe,

Court of Common Pleas of Philadelphia County, found Petitioner guilty of two (2) counts

of robbery, two (2) counts of attempted murder, one (1) count of aggravated assault, and

one (1) count of conspiracy.  On June 24, 2002, Judge Dembe sentenced Petitioner to an

aggregate term of twenty-seven and one-half (27½) to seventy (70) years of

imprisonment.

Petitioner filed a direct appeal arguing:

1.  ineffective assistance of trial counsel for failure to fully advise Petitioner as to his pleading options including the right to enter an open plea or a plea of nolo contendere, and for guaranteeing Petitioner that he would be acquitted of the felony charges;

2.  insufficiency of the evidence to sustain Petitioner's conviction for robbery;

3.  the trial court erred by denying Petitioner's motion to suppress the identification
of Petitioner by photo array; and

4.  the trial court erred by denying Petitioner's Rule 600 motion for speedy trial,
and by failing to observe Rule 704 requiring Petitioner be sentenced within ninety
(90) days of his conviction.

The Pennsylvania Superior Court affirmed the judgment of sentence on June 6, 2003.

Commonwealth v. Flamer, 830 A.2d 1045 (Pa. Super. 2003); No. 2285 EDA 2002 (Pa.

Super. June 6, 2003) (unpublished memorandum), attached as Appendix "A" to Response

(Doc. No. 9).  The Pennsylvania Supreme Court denied Petitioner's petition for allowance

of appeal on November 25, 2003.  Commonwealth v. Flamer, 837 A.2d 1177 (Pa. 2003);

No. 297 EAL 2003 (Pa. 2003).

On December 30, 2003, Petitioner filed a pro se petition under Pennsylvania's Post

Conviction Relief Act ("PCRA"), 42 Pa. Con. Stat. Ann. § 9541, et seq.  Counsel was

appointed to represent Petitioner and he filed an amended petition on June 24, 2004.[1]   On

May 13, 2005, the PCRA court dismissed Petitioner's PCRA petition.  Petitioner appealed

the denial of PCRA relief to the Superior Court, which affirmed the PCRA court's ruling

on March 31, 2008.  Commonwealth v. Flamer, 953 A.2d 828 (Pa. Super. 2008); No.

1607 EDA 2005 (Pa. Super. Mar. 31, 2008) (unpublished memorandum), attached as

---

[1]Despite having been appointed counsel, Petitioner filed a pro se supplemental petition on
November 24, 2004.  On November 30, 2004, the trial court gave Petitioner notice that it would
be dismissing his pro se supplemental petition without a hearing because the issues he raised
were without merit.  Petitioner's counsel filed another amended petition on December 1, 2004.
In April, 2005, the trial court gave Petitioner notice of its intent to dismiss the petition without a
hearing based upon its finding that neither Petitioner's counseled petition nor pro se
supplemental petition had merit.

Appendix "B" to Response (Doc. No. 9).  Petitioner did not seek review in the

Pennsylvania Supreme Court.

On June 27, 2008, Petitioner filed the instant petition for writ of habeas corpus

claiming that:

> 1.  the evidence was insufficient as a matter of law to find Petitioner guilty of the
> robbery of Orlando Butler;
>
> 2.  the trial court erred by failing to suppress the photo array identification;
>
> 3.  trial counsel rendered ineffective assistance by failing to present the testimony
> or confession of Jerome Pinkard;
>
> 4.  trial counsel rendered ineffective assistance by failing to object at sentencing to
> the offense gravity score applied by the court; and
>
> 5.  appellate counsel rendered ineffective assistance by failing to pursue an
> ineffectiveness claim against trial counsel for failing to impeach the testimony of
> Commonwealth witness Morgan Hall.

Respondents have filed a response (Doc. No. 9) asserting that Petitioner is not entitled to

federal habeas relief because his claims are without merit.

**DISCUSSION**

**1.      Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") increased

the deference federal courts must give to the factual findings and legal determinations of

the state courts.  Woodford v. Visciotti, 537 U.S. 19, 24 (2002); Werts v. Vaughn, 228

F.3d 178, 196 (3d Cir. 2000) (citing Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996)).

Pursuant to 28 U.S.C. § 2254(d), as amended by the AEDPA, a petition for habeas corpus

may only be granted if (1) the state court's adjudication of the claim resulted in a decision

contrary to, or involved an unreasonable application of, "clearly established Federal law,

as determined by the Supreme Court of United States;" or if (2) the adjudication resulted

in a decision that was "based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  Factual

issues determined by a state court are presumed to be correct and the petitioner bears the

burden of rebutting this presumption by clear and convincing evidence.  Werts, 228 F.3d

at 196.

The Supreme Court expounded upon this language in Williams v. Taylor, 529 U.S.

362 (2000).  In Williams, the Court explained that "[u]nder the 'contrary to' clause, a

federal habeas court may grant the writ if the state court arrives at a conclusion opposite

to that reached by [the Supreme] Court on a question of law or if the state court decides a

case differently than [the Supreme] Court has on a set of materially indistinguishable

facts."  Hameen v. State of Delaware, 212 F.3d 226, 235 (3d Cir. 2000) (citing Williams,

529 U.S. at 389-390).  The Court in Williams further stated that  "[u]nder the

'unreasonable application' clause, a federal habeas court may grant the writ if the state

court identifies the correct legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case."  Id.  The

"unreasonable application" inquiry requires the habeas court to "ask whether the state

court's application of clearly established federal law was objectively unreasonable."  Id.

(citing Williams, 529 U.S. at 388-389).  "In further delineating the 'unreasonable

application of' component, the Supreme Court stressed that an unreasonable application

of federal law is different from an incorrect application of such law and a federal habeas

court may not grant relief unless that court determines that a state court's incorrect or

erroneous application of clearly established federal law was also unreasonable."  Werts,

228 F.3d at 196 (citing Williams, 529 U.S. at 389); accord Matteo v. Superintendent, SCI

Albion, 171 F.3d 877 (3d Cir. 1999).

**2.      Petitioner's Claims**

**A.      The Evidence was Insufficient to Support his Conviction for the
            Robbery of Orlando Butler**

In his first claim, Petitioner asserts that the evidence introduced at trial was

insufficient to support his conviction for robbing Orlando Butler, one of the two (2)

victims in the parked car.  It has long been established that due process requires that a

person can only be convicted of the crime with which he is charged by proof of every

element of the criminal offense beyond a reasonable doubt.[2]  Jackson v. Virginia, 443

U.S. 307, 316 (1979); In re Winship, 397 U.S. 358, 364 (1970); Davis v. United States,

160 U.S. 469, 488 (1895); Kamienski v. Hendricks, 2009 WL 1477235, at *11 (3d Cir.

2009).  In reviewing challenges to the sufficiency of the evidence, a court must determine

"whether, after reviewing the evidence in the light most favorable to the prosecution, any

---

[2]When reviewing a sufficiency of the evidence claim on habeas corpus review, federal
courts look to the evidence the state considers adequate to meet the elements of a crime governed
by state law.  Jackson v. Byrd, 105 F.3d 145, 149 (3d Cir. 1997).

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Sullivan v. Cuyler, 723 F.2d 1077, 1083-84 (3d Cir. 1983) (quoting Jackson, 443 U.S. at 319) (emphasis in original). The task of resolving differences in the testimony, weighing the evidence, and drawing reasonable inferences from basis facts to illuminate facts is reserved for the factfinder and as such, is beyond the scope of federal habeas sufficiency review. Jackson, 443 U.S. at 319.

The AEDPA has limited a habeas court's role in reviewing a claim that the evidence adduced at trial was insufficient to support a conviction. Under 28 U.S.C. § 2254(d)(1), a writ of habeas corpus may be issued for evidentiary insufficiency only if the state courts have unreasonably applied the Jackson "no rational trier of fact standard" or the state equivalent of the Jackson standard. See Kirnon v. Klopotoski, 2008 WL 5264882, at *8 (E.D. Pa. Dec. 17, 2008); Smith v. Vaughn, 1997 WL 338851, at *7 (E.D. Pa. June 17, 1997) (citing Gomez v. Acevedo, 106 F.3d 192, 199 (7th Cir. 1997), vacated and remanded on other grounds, 522 U.S. 801 (1997) (28 U.S.C. § 2254(d)(1) requires deference to the state court's Jackson determination).

Petitioner argues that he cannot be convicted of robbing Orlando Butler, because Mr. Butler, one of the two victims, did not testify at trial. At the outset, I note that under Pennsylvania law, a person is guilty of the crime of robbery if, in the course of committing a theft, he inflicts serious bodily injury upon another; or threatens another with or intentionally puts him in fear of immediate serious bodily injury. See 18

Pa.C.S.A. § 3701(a).

In denying Petitioner's sufficiency of the evidence claim, the Superior Court

stated:

> A review of the record indicates that Hall testified that [Petitioner] entered
> the vehicle, demanded the valuables of Butler and Hall and when they did
> not comply, pistol-whipped Butler.  Thereafter, [Petitioner], while
> brandishing his weapon, repeated his demands, and the victims surrendered
> their valuables to [Petitioner].  Clearly, this evidence is sufficient to
> demonstrate that [Petitioner] inflicted or intentionally put Butler in fear of
> serious immediate bodily injury in the course of committing a theft.
>
> [Petitioner] contends that the evidence is insufficient to convict him of
> robbing Butler, because Butler did not testify at trial.  This argument is
> entirely without merit.  Hall's eyewitness testimony was sufficient to
> establish that [Petitioner] perpetrated the crime of robbery against both Hall
> and Butler.

Commonwealth v. Flamer, 830 A.2d 1045 (Pa. Super. 2003); No. 2285 EDA 2002 (Pa.

Super. June 6, 2003) (unpublished memorandum), attached to Respondents' Answer

(Doc. No. 9) as App. "A."

I agree with the state court's conclusion.  In Commonwealth v. Jones, 308 A.2d

598, 607 (Pa. 1973), the Pennsylvania Supreme Court, while analyzing a similar

sufficiency of the evidence claim, found that the Commonwealth's inability to produce a

robbery victim was not fatal where other witnesses testified that the victim had been

robbed.  In the instant matter, the Superior Court applied the same reasoning, and as a

result, properly concluded that the evidence was sufficient to sustain a verdict of guilty

against Petitioner for the robbery of Butler.

As a result, I conclude that the state court properly set forth the elements of the law

and applied relevant trial evidence thereto in finding the evidence sufficient to establish

that Petitioner was guilty of the crime of robbery.  The state courts' finding on this issue

is neither contrary to United States Supreme Court precedent nor an unreasonable

determination of the facts.  28 U.S.C. § 2254(d).  Accordingly, this claim is denied.

      **B.**      **The Trial Court Erred by Failing to Suppress the Photo Array Identification**

In his second claim, Petitioner asserts that trial court erred by failing to suppress

the photo array used to identify him. The Supreme Court has recognized that "the

confrontation compelled by the State between the accused and the victim or witness to a

crime to elicit identification evidence is particularly riddled with innumerable dangers and

variable factors which might seriously, even crucially, derogate from a fair trial." United

States v. Wade, 388 U.S. 218, 228 (1967).  An accused is entitled to due process

protection against the introduction of evidence of, or tainted by, unreliable pretrial

identifications elicited through unnecessarily suggestive photographic displays. Moore v.

Illinois, 434 U.S. 220, 227 n.3 (1977) (citing Unites States v. Ash, 413 U.S. 300, 320

(1973)); see also Neil v. Biggers, 409 U.S. 188, 198 (1972) (suggestive confrontations are

disapproved because they increase the risk that a conviction will be based on a

misidentification).  If there was a suggestive identification procedure, the question

becomes whether the suggestiveness "created 'a very substantial likelihood of

misidentification.'" United States v. Dowling, 855 F.2d 114, 117 (3d Cir. 1988) (citing

United States v. Milhollan, 599 F.2d 518, 522-23 (3d Cir. 1979) (quoting Neil, 409 U.S.

at 198).  This question is to be answered with reference to the "totality of the

circumstances," with particular attention paid to such relevant factors as the quality of the

witnesses' original opportunity to view the criminal, their degree of attention, their level

of certainty when confronted with the suspect or his image, and the length of time

between the crime and the confrontation.  Id. (citing Neil, 409 U.S. at 199-200).  "The

defendant has the initial burden of demonstrating that the confrontation procedure was

impermissibly suggestive."  Reese v. Fulcomer, 946 F.2d 247, 259 (3d Cir. 1991).  "Only

if the defendant meets this initial burden will the court consider the admissibility of the

identification under the 'totality of the circumstances.'"  Id.

I conclude that Petitioner has not carried the initial burden of demonstrating that

the photographic identification was impermissibly suggestive.  See 28 U.S.C. §

2254(e)(1)) (factual issues determined by a state court are presumed to be correct and the

petitioner bears the burden of rebutting this presumption by clear and convincing

evidence).  In fact, Petitioner failed to state *any* facts that would suggest that the

photographic identification was in any way improper.  In evaluating this claim, the state

court found:

> Detective Patrick Smith of the Philadelphia Police Department offered
> detailed testimony of the photo array identification procedure.  Detective
> Smith testified that he directed Hall to view a computer screen that showed
> a series of eight photographs of similar looking unnamed suspects grouped
> together from relevant parameters supplied by Hall, such as: color, height,
> stature, frame, build and age.  These parameters were gleaned from an
> interview conducted with Hall.  Detective Smith showed Hall four screens
> of eight suspects (32 pictures in total), and Hall identified [Petitioner] as the

perpetrator of the robbery immediately upon seeing his photograph. Detective Smith neither made any suggestive statements following the identification nor did he raise his voice to Hall or suggest that Hall made the "right" identification. Therefore, we find that the photo array procedure employed by Detective Smith was not unduly suggestive.

Commonwealth v. Flamer, 830 A.2d 1045, No. 2285 EDA 2002 (Pa. Super. June 6, 2003)

(citations omitted).

Petitioner asserts that because the identifying witness, Morgan Hall, was not

present at the suppression hearing, and because the testimony offered by Detective Patrick

Smith was hearsay, the motion to suppress the identification should have been granted. In

rejecting this claim, the state court found:

> The presence of an identifying witness at a hearing to suppress a pre-trial on-the scene identification is not mandatory. Rather, the essential criteria in determining whether or not evidence of pre-trial identification is admissible is its reliability under all the circumstances disclosed by the record. When considering the reliability of the pretrial identification evidence presented at the suppression hearing, the following factors must be considered: the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

> In the present case, no evidence was produced at the suppression hearing of the witness' opportunity to view the criminal at the time of the crime. Nevertheless, it is clear that Hall gave Detective Smith an immediate, clear and unequivocal identification of [Petitioner] when [Petitioner's] picture appeared in the photo array. Further, Hall made the identification immediately after his discharge from the hospital, which was three days after the crime occurred. As we have already determined that the identification procedure was not suggestive, we are satisfied that the totality of the circumstances indicate that the identification testimony of Detective Smith was reliable and consequently, the trial court did not err when it

> admitted the identification testimony.  Finally, we note that [the] record
> indicates no element of unfairness at the suppression hearing itself.
> [Petitioner] was free to cross-examine the Detective and to take the stand to
> dispute his testimony.

Id. (citations omitted).  I find no error in the Superior Court's conclusions that the

identification procedure was not improperly suggestive and that the trial court did not err

in denying Petitioner's motion to suppress the identification.  As such, the state courts'

finding on this issue is neither contrary to United States Supreme Court precedent nor an

unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Accordingly, this claim is

denied.

   C.     **Trial counsel rendered ineffective assistance by failing to present the
          testimony or confession of Jerome Pinkard**

   In his third claim, Petitioner asserts that trial counsel rendered ineffective

assistance by failing to present the testimony or confession of his cohort, Jerome Pinkard.

Petitioner's claim of ineffective assistance of counsel is governed by Strickland v.

Washington, 466 U.S. 668 (1984).  In Strickland, the United States Supreme Court set

forth the standard for a petitioner seeking habeas relief on the grounds of ineffective

assistance of counsel:

> First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors
> so serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair
> trial, a trial whose result is reliable.

Id. at 687.  Because "it is all too easy for a court, examining counsel's defense after it has

proved unsuccessful, to conclude that a particular act or omission of counsel was

unreasonable," a court must be "highly deferential" to counsel's performance and

"indulge a strong presumption that counsel's conduct falls within the wide range of

reasonable professional assistance."  Id. at 689.  In determining prejudice, "the question is

whether there is a reasonable probability that, absent the errors, the factfinder would have

had a reasonable doubt respecting guilt."  Id. at 695.

"It is past question that the rule set forth in Strickland qualifies as 'clearly

established Federal law, as determined by the Supreme Court of the United States.'"

Williams, 529 U.S. at 391.  Thus, Petitioner is entitled to relief if the Pennsylvania courts'

rejection of his claims was either "contrary to, or involved an unreasonable application

of," that established law.

In reviewing this claim, the state court noted that Petitioner did not "cite to or

provide written certification [that] Pinkard would have testified on Petitioner's behalf or

even what testimony Pinkard would have presented."  Commonwealth v. Flamer, 953

A.2d 828, No. 1607 EDA 2005 (Pa. Super. Mar. 31. 2008).  Absent any evidence, or even

any argument as to Pinkard's potential testimony, trial counsel could not be found to have

rendered ineffective assistance for failing to introduce testimony from Pinkard.  Further, it

is clear that trial counsel could not have compelled Pinkard to testify on Petitioner's

behalf, as Pinkard had a Fifth Amendment right to avoid incriminating himself.

13

In considering the issue of Pinkard's purported confession, the state court found:

> In his statement, Pinkard admitted that he and [Petitioner], armed with handguns, had robbed two [2] occupants of a parked car. Pinkard stated that he had stolen a jacket from one of the passengers and then fled to the getaway car. As Pinkard fled the scene, he said that [Petitioner] went to the driver's side of the car, where Hall was sitting, for a few minutes. Pinkard stated that [Petitioner] then returned to the getaway car and they drove off. Pinkard also stated that he and [Petitioner] had committed other robberies together. At the end of the statement, Pinkard indicated that "he didn't mean to shoot that boy it was accident. If he shoot him it was by mistake." In its context, it is unclear to what shooting Pinkard is referring. However, read in it's entirety, Pinkard's statement seems to corroborate Hall's testimony and indicates that Pinkard was not in the vehicle when Hall was shot. Accordingly, we conclude that [Petitioner's] claim has no merit because he has not shown that this statement was exculpatory or clearly supported a mistaken identity defense.

Commonwealth v. Flamer, 953 A.2d 828, No. 1607 EDA 2005 (Pa. Super. Mar. 31. 2008).

I conclude that the state court's application of the law was reasonable. The state court examined the purported confession of Pinkard and found that it actually supported the victim's testimony that Petitioner shot him. Counsel cannot be found ineffective for failing to introduce potentially damaging evidence against his client. Further, even if counsel's performance were deficient, and I do not find that it was, Petitioner did not offer any evidence to prove that he was prejudiced by trial counsel's purported ineffective assistance. See Strickland, 466 U.S. at 687. As a result, I find that the state court's conclusion that Petitioner's trial counsel did not provide ineffective assistance was neither contrary to, nor an unreasonable application of, federal law. Accordingly, this claim is denied.

**D.     Trial counsel rendered ineffective assistance by failing to object at sentencing to the offense gravity score applied by the court**

In his next claim, Petitioner contends that the trial court erred by using an offense gravity score of 14, rather than 13, in determining his sentence, and that trial counsel rendered ineffective assistance for failing to object.  Pursuant to 42 Pa. C.S.A. § 9721, a person convicted of attempted murder receives an offense gravity score of 14, if there is serious bodily injury to the victim, and a score of 13, if there is no serious bodily injury. Petitioner asserts that because Hall did not suffer serious bodily injury, the offense gravity score of 13, should have been applied.

In assessing this claim the state court noted:

> [Petitioner] bases his entire argument on his assertion that Hall did not suffer serious bodily injury.  [Petitioner] points to testimony from the plea colloquy hearing indicating that the bullet grazed Hall's ear, but did not cause nerve damage.  However, [Petitioner] disregards Hall's testimony at trial that [Petitioner] shot him and the bullet went into his neck.  Based upon this testimony, the evidence supported a finding Hall suffered serious bodily injury.

Commonwealth v. Flamer, No. 1607 EDA 2005 (Pa. Super. Mar. 31. 2008) (citations omitted).  The Superior Court concluded that the victim did suffer serious bodily injury, that the appropriate offense gravity score of 14 was applied, and that there was no trial court error.

I conclude that the state court's application of the law was reasonable.  The state court examined the underlying evidence and properly determined that the application of an offense gravity score of fourteen was warranted.  It follows, therefore, that counsel

cannot be found to have rendered ineffective assistance for failing to object, where the

underlying objection has no merit.  See Parrish v. Fulcomer, 150 F.3d 326, 328-329 (3d

Cir. 1998) (counsel cannot be deemed ineffective for failing to pursue a meritless

argument).

As a result, I conclude that the state court's conclusion that Petitioner's counsel did

not provide ineffective assistance for failing to object to the application of an offense

gravity score of 14 was not a decision that was contrary to, nor an unreasonable

application of, federal law.  Accordingly, this claim is denied.

**E.    Direct appellate counsel rendered ineffective assistance by failing to claim ineffective assistance of trial counsel for failing to impeach Hall on his medical condition**

In his fifth claim, Petitioner asserts that direct appeal counsel rendered ineffective

assistance for failing to claim ineffective assistance of trial counsel for failing to impeach

Hall about his medical condition.  Respondents contend that this claim has never been

presented to the state court and that, therefore, it is unexhausted.  I agree.

Although Petitioner has not presented this claim to any state court, I note that

exhaustion should be excused for this claim pursuant to 28 U.S.C. 2254 (b)(1), because a

return to the state court would be futile due to "an absence of available State corrective

process."  Lines v. Larkins, 208 F.3d 153, 162 (3d Cir. 2000).  The only way in which

Petitioner could present this claim in the state court at this time is by filing another PCRA

petition.  See Szuchon v. Lehman, 273 F.3d 299, 324 n.14 (3d Cir. 2001); Lines, 208 F.3d

at 164 & n. 17.  However, any such petition would be time barred by the PCRA statute of

limitations.[3]  As a result, exhaustion would be futile and is excused.

When a claim is not exhausted because it has not been "fairly presented" to the

state courts, but state procedural rules bar a petitioner from seeking further relief in state

courts, the exhaustion requirement is satisfied because there "is an absence of state

corrective process."  McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)(citing 28

U.S.C. 2254(b)).  In such cases, however, petitioners are considered to have procedurally

defaulted their claims and federal courts may not consider the merits of such claims

unless the petitioner establishes "cause and prejudice" to excuse his default.  Id. (citing

Coleman v. Thompson, 501 U.S. 722, 750 (1991)).

The Supreme Court has delineated what constitutes "cause" for the procedural

default: the petitioner must "show that some objective factor external to the defense

impeded counsel's efforts to comply with the State's procedural rule."  Werts, 228 F.3d at

192-193 (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)).  With regard to the

prejudice requirement, the habeas petitioner must prove "'not merely that the errors at . . .

trial created a possibility of prejudice, but that they worked to his actual and substantial

disadvantage, infecting his entire trial with error of constitutional dimensions.'"  Id. at

193 (citing Carrier, 477 U.S. at 494).  This standard essentially requires the petitioner to

---

[3]Pursuant to the amended PCRA, effective January 16, 1996, collateral actions must filed within one (1) year of the date the conviction at issue becomes final.  42 Pa. Cons. Stat. Ann 9545 (b)(1).

show he was denied "fundamental fairness" at trial.  Id.

In the alternative, if the petitioner fails to demonstrate cause and prejudice for the

default, the federal court may also consider the claim will result in a fundamental

miscarriage of justice.  Coleman, 501 U.S. at 748.  In order to satisfy the fundamental

miscarriage of justice exception, the Supreme Court requires that the petitioner show that

a "constitutional violation has probably resulted in the conviction of one who is actually

innocent."  Schlup v. Delo, 513 U.S. 298, 327 (1995) (citing Carrier, 477 U.S. at 496);

see Glass v. Vaughn, 65 F.3d 13, 16-17 (3d Cir. 1995) (assuming that the Schlup

miscarriage of justice/actual innocence standard applied to a noncapital petitioner arguing

eligibility for lesser degree of guilt).  To satisfy the "actual innocence" standard, a

petitioner must show that, in light of new evidence, it is more likely than not that no

reasonable juror would have found him guilty beyond a reasonable doubt.  Schlup, 513

U.S. at 327; see also Glass, 65 F.3d at 16.

Petitioner has not even attempted to provide this court with an explanation for his

failure to fairly present this claim to the state courts.  As a result, he has not shown cause

to excuse his procedural default.[4]  Carrier, 477 U.S. at 488.  Moreover, because Petitioner

makes no colorable showing of innocence, he has failed to demonstrate that a miscarriage

of justice will result if his claim is not reviewed.  Coleman, 501 U.S. at 748; Schlup, 513

---

[4]Because no cause has been demonstrated, the court need not address the prejudice
requirement.  Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982) (because petitioner lacked cause for
default, the court need not consider whether he also suffered actual prejudice).

U.S. at 327 (citing Carrier, 477 U.S. at 496); see Glass, 65 F.3d at 16-17.  As a result,

federal review of this claim is foreclosed.

**CONCLUSION**

After close and objective review of the arguments and evidence, I conclude that

Petitioner's petition for writ of habeas corpus is meritless. As a result Petitioner's petition

will be denied.

Similarly, because Petitioner's claims are both legally and factually meritless, there

is no need to conduct an evidentiary hearing nor is there a need to appoint counsel, as

neither would change the outcome of this matter.  See Dade v. Diguglielmo, 283 Fed.

Appx. 979, 982 (3d Cir 2008); Campbell v. Vaughn, 209 F.3d 280, 287 (3d Cir. 2000);

Reese v. Fulcomer, 946 F.2d 247, 263–64 (3d Cir. 1991), superceded on other grounds by

statute, 28 U.S.C. § 2254(d).

An appropriate order follows.